```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
```

LOU DIBELLA et ano,  :

              Plaintiff,  :  **MEMORANDUM DECISION**

      - against -  :  01 Civ. 11779 (DC)

BERNARD HOPKINS,  :

              Defendant.  :

```
- - - - - - - - - - - - - - - - - -x
```

**APPEARANCES:**　　JUDD BURSTEIN, P.C.
　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　By:　Judd Burstein, Esq.
　　　　　　　　　　　　　　 Peter B. Schalk, Esq.
　　　　　　　　　　　　　　 Matthew G. DeOreo, Esq.
　　　　　　　　　　1790 Broadway, Suite 1501
　　　　　　　　　　New York, NY　10019

　　　　　　　　　　COZEN O'CONNOR
　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　By:　Edward Hayum, Esq.
　　　　　　　　　　　　　　 Robert W. Hayes, Esq.
　　　　　　　　　　　　　　 Marlo Pagano-Kelleher, Esq.
　　　　　　　　　　45 Broadway Atrium, Suite 1600
　　　　　　　　　　New York, NY　10006

**CHIN, D.J.**

        On November 19, 2002, a jury rendered a verdict in this case in favor of plaintiff Lou DiBella on his claim that he had been libeled by defendant Bernard Hopkins in statements published in an Internet boxing magazine. The jury awarded DiBella $610,000. The jury rejected DiBella's other libel claims as well as claims by DiBella and his company, DiBella Entertainment, Inc., for quantum meruit. See DiBella v. Hopkins, 285 F. Supp. 2d 394 (S.D.N.Y. 2003).

Both sides appealed. The Second Circuit affirmed, DiBella v. Hopkins, 403 F.3d 102 (2d Cir. 2005), and the Supreme Court denied a petition for a writ of certiorari. Hopkins v. DiBella, 126 S. Ct. 428 (Oct. 11, 2005) (No. 05-283).

On November 9, 2005, DiBella submitted a bill of costs, seeking $71,458.98. On November 21, 2005, the Clerk of the Court allowed DiBella $14,581.23 in costs.

DiBella moves for an order modifying the award of costs, seeking an additional (a) $56,100 for the cost of certain services provided by a trial consultant and (b) $470.25 for the cost of the transcript of the deposition of Dr. Michael Hoffman. These (and other) requested costs were not allowed by the Clerk of the Court. Hopkins cross-moves for an order modifying the award of costs, seeking to (a) eliminate the award of $299.35 for the cost of the deposition transcript of Don King and (b) reduce the total taxable costs by four-fifths because DiBella prevailed on only one of the five claims presented to the jury.

For the reasons that follow, DiBella's motion is granted in part and denied in part and Hopkins's cross-motion is denied.

### DISCUSSION

**1. DiBella's Motion**

    **a) The Trial Consultant**

DiBella retained Dubin Research & Consulting, Inc. ("DRC"), a "litigation consulting firm," to assist in this case. (Dubin 10/27/05 Decl. ¶¶ 1, 3). DRC's principal is Joshua Dubin,

a member of the Florida Bar, who was admitted pro hac vice prior to the start of the trial. (Id. ¶¶ 1, 2, 4). DRC provided the following services to DiBella and his trial counsel: "venue analysis study, construction of controlled juror profile, creation of voir dire questions, jury selection, rhetoric consulting[,] witness preparation, strategic development of demonstrative aids, jury monitoring, hardware design/support, technical support at trial, video/audio conversion." (Id. ¶ 3). DiBella paid DRC $85,000 for all its services rendered in the case. (Id. ¶ 5). Dubin estimates that 66% of the fee (or $56,100) was attributable to "the design and production of demonstrative presentations for trial, scanning of exhibits, computer operation, creation of exhibit database, digitizing of audio and visual recordings, and set-up and break-down of technology used during trial." (Id. ¶ 6).

DiBella included $56,100 in his bill of costs, to account for this portion of DRC's bill, in the category "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." (See Bill of Costs). The total requested for the category was $56,214.30, which included $114.30 for photocopies of exhibits used at trial. The Clerk allowed the $114.30 but disallowed the $56,100 for DRC.

DiBella now seeks an order allowing the $56,100. Hopkins objects. DiBella's request is granted in part and denied in part.

In general, "costs other than attorneys' fees shall be

allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). Hence, expenses that are properly characterized as attorneys' fees, such as on-line legal research expenses, cannot be recovered as "costs" and may be recovered only as part of an attorneys' fees application where attorneys' fees are allowed by statute or contract. See <u>United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.</u>, 95 F.3d 153, 171, 173 (2d Cir. 1996). In this libel case, no statutory basis exists for shifting attorneys' fees and thus DiBella can recover only his "costs."

The general categories of taxable costs are set forth in 28 U.S.C. § 1920. These include "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Although there is some disagreement as to whether the reference to "exemplification" includes demonstrative aids, <u>compare</u> <u>Cefalu v. Village of Elk Grove</u>, 211 F.3d 416, 427 (7th Cir. 2000) (term "exemplification" includes "a wide variety of exhibits and demonstrative aids"), <u>with</u> <u>Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.</u>, 249 F.3d 1293, 1297 (11th Cir. 2001) (term "exemplification" includes only "an official transcript of a public record, authenticated as a true copy for use as evidence") (quoting Black's Law Dictionary 593 (7th ed. 1999), I conclude that § 1920(4) authorizes a court to tax the cost of preparing demonstrative aids, including charts, blow-ups, and computer graphics.

First, in this District, Local Civil Rule 54.1(c)(6)

provides that "[c]osts of maps, charts, and models, including computer generated models, are not taxable except by order of court." Hence, by local rule, it would appear that the Court has the discretion to allow the cost of charts, blow-ups, and computer graphics used at trial. See Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 67 (E.D.N.Y. 2003) (citing, inter alia, Local Civil Rule 54.1(6) and taxing $500 in costs to account for time spent preparing Power Point presentation by director of technology at plaintiff's law firm); see also In re Air Crash Disaster at John F. Kennedy Int'l Airport, 687 F.2d 626, 631 (2d Cir. 1982) (holding that § 1920(4) entitles a prevailing party to recover "'reasonable expense of preparing maps, charts, graphs, photographs, motion pictures, photostats and kindred materials'" as well as cost of producing computer expenses, demonstration models and exhibits, and transcripts of flight recorder tape) (quoting 6 Moore's Federal Practice ¶ 54.77(6), at 1739 (2d ed.)).

Second, blow-ups, digital presentations of scanned documents, and other computer graphics serve the same function as exhibits and other papers used at trial, and there is no logical reason to differentiate between the former and the latter in terms of their taxability as costs. Digitized copies of documents shown on a television monitor or screen are the functional equivalent of photocopies of documents in jury binders.

Third, as Magistrate Judge Wall noted in Tokyo

Electron, "the use of technology to improve the presentation of information to the jury and/or to the bench" should be supported. 215 F.R.D. at 67.  Computers, computer graphics, digitized documents, and other technological advancements have become important tools of the modern-day trial lawyer.  As long as the cost is reasonable and the devices aid in the efficient and effective presentation of evidence, a prevailing party should be allowed to recover their expense.  Here, both sides used computer technology and demonstrative graphics at trial, and the use of these items helped to facilitate the presentation of evidence.

Accordingly, DiBella is entitled to recover a portion of the expense he incurred for the "design and production of demonstrative presentations for trial, scanning of exhibits, computer operation, creation of exhibit database, digitizing of audio and visual recordings, and set-up and break-down of technology used during trial."  (Dubin 10/27/05 Decl. ¶ 6).  The requested amount of $56,100, however, is not reasonable.  This amount undoubtedly includes compensation for time spent by Dubin as an attorney, time that is not compensable under "costs."

Hopkins points out that he spent only $5,241.43 for similar exemplification and computer services at trial.  (See Hayum 11/18/05 Aff. Ex. C).  But the amount spent by Hopkins for similar items is only one measure of what would be reasonable. Indeed, DiBella's computer graphics and demonstrative aids were more comprehensive and more effective than those used by Hopkins. Considering all the circumstances, I award DiBella $10,000 for

the cost of preparing and producing demonstrative aids and the computerized presentation of exhibits at trial.

    **b)**    **Hoffman's Transcript**

Prior to trial, Hopkins listed Dr. Michael Hoffman as an expert witness to be called on the issue of "business ethics." DiBella moved in limine to preclude Hoffman from testifying and I granted the motion. DiBella v. Hopkins, No. 01 Civ. 11779 (DC), 2002 WL 31427362, *3-4 (S.D.N.Y. Oct. 30, 2002). Hence, Hoffman never testified at trial, and his deposition transcript was not used at trial or otherwise in the case.

Pursuant to Local Rule 54.1(c)(2), unless the court orders otherwise, the Clerk may tax the cost of deposition transcripts "used or received in evidence at trial" or "used by the court in ruling on a motion for summary judgment or other dispositive substantive motion." Rule 54.1(c)(2) also provides that "[c]osts for depositions taken solely for discovery are not taxable." Here, Hoffman's deposition was not used at trial or on any substantive dispositive motion. It was purely a discovery deposition, taken as part of counsel's efforts to prepare for trial. Accordingly, the Clerk correctly disallowed this item.

**2.**   **Hopkins's Cross-Motion**

    **a)**    **The King Deposition**

The Clerk allowed $299.35 for the cost of transcribing the deposition of Don King because the King deposition was in fact used at trial. Hopkins now asks the Court to disallow the item because King purportedly testified solely in support of

plaintiffs' unsuccessful quantum meruit claim. Hopkins's request is denied. The argument that King testified solely with respect to the quantum meruit claim is not correct. He played a role generally in the events that led to the dispute, and his testimony provided some useful background.

**b)** **DiBella's Purported Lack of Success**

Hopkins argues that any award of costs must be reduced by four-fifths because DiBella prevailed on only one of five claims. The argument is rejected.

There is no doubt that DiBella was the prevailing party as the jury found in his favor on the principal issue in the case -- whether Hopkins's public accusation that DiBella had asked for and taken a $50,000 bribe was false. The jury squarely held that the accusation was false, and the jury held further that Hopkins made the false statement maliciously or recklessly. The jury awarded DiBella substantial damages -- $610,000, of which $500,000 was in punitive damages. This was clearly a significant and strong victory for DiBella.

It is true, of course, that the jury found against DiBella and his company on the remaining claims, but DiBella still was the prevailing party. See 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2667 at 212 (3d ed. 1998) ("[A] claimant who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims."). Moreover, the unsuccessful claims were inextricably intertwined with DiBella's

though he has not sustained all his claims."). Moreover, the unsuccessful claims were inextricably intertwined with DiBella's successful defamation claim and did not require any significantly different or additional evidence. Rule 54(d)(1) of the Federal Rules of Civil Procedure does not require a court to apportion costs to account for unsuccessful claims. Although I have the discretion to reduce the award of costs, under all the circumstances, and because DiBella prevailed on the most significant issues, I decline to do so. See 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2668 (3d ed. 1998) (discussing the court's discretion to award, deny, or apportion costs).

## CONCLUSION

For the foregoing reasons, DiBella's motion is granted in part and denied in part and Hopkins's cross-motion is denied. The Clerk's award of costs is modified to the extent that the Clerk is directed to increase the award of costs from $14,581.23 to $24,581.23.

SO ORDERED.

Dated: New York, New York
December 29, 2005

DENNY CHIN
United States District Judge